**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**

SHERRIE SENSOLI,[1]

    Plaintiff,

v.                            CASE NO. 08-CV-13621

COMMISSIONER OF              DISTRICT JUDGE NANCY G. EDMUNDS
SOCIAL SECURITY,               MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[2]

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] I note that the docket indicates Plaintiff's first name is spelled "Sherri." However, the complaint and the briefs of the parties spell her first name "Sherrie," so this Report will reflect what appears to be the proper spelling of her first name.

[2] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

**II.     REPORT**

    **A.     Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability insurance benefits. This matter is currently before the Court on cross-motions for summary judgment. (Doc. 11, 14.)

Plaintiff was 45 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 5 at 19, 51, 548.) Plaintiff's relevant employment history includes work as a food prep/salad maker, parts inspector, and machine operator. (Tr. at 22, 27.) Plaintiff last worked in 2007. (Tr. at 22.)

Plaintiff filed the instant claim on July 19, 2004, alleging that she became unable to work on March 2, 2004.[3] (Tr. at 51.) The claim was denied at the initial administrative stages. (Tr. at 41.) In denying Plaintiff's claims, the Defendant Commissioner considered affective disorders and disorders of the back, discogenic and degenerative, as possible bases of disability. (*Id.*)

On May 10, 2007, Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Peter N. Dowd, who considered the instant application for benefits *de novo*. (Tr. at 16-28.) In a decision dated June 21, 2007, the ALJ found that Plaintiff was not disabled as she could return to her prior work as a food prep/salad maker, parts inspector and machine operator. (Tr. at 27.) Plaintiff requested a review of this decision on July 16, 2007. (Tr. at 13-14.)

---

[3]Plaintiff also filed for Supplemental Security Income ("SSI") benefits on July 19, 2004, alleging a disability onset date of March 2, 2004. (Tr. at 523.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on June 26, 2008, when, after the review of additional exhibits[4] (Tr. at 539-40), the Appeals Council denied Plaintiff's request for review. (Tr. at 4-6.) On August 20, 2008, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Doc. 1.)

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by

---

[4]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920.  *See also Heston,* 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work."  *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540).  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and

considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. Administrative Record

A review of the relevant medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff's medical problems began after she was involved in an automobile accident in 1992. (Tr. at 22.)

An MRI performed on May 28, 2004, was "mildly abnormal," showing "slight L5 root irritation without evidence of sustained denervation, which could be consistent with degenerative lumbar spine disease or mild disc pathology." (Tr. at 185.) There was "no evidence of diffuse peripheral neuropathy or mononeuropathy of both lower extremities." (*Id.*)

Plaintiff sought treatment with Nael M. Tarakji, M.D., from February 2004 through 2005. On February 10, 2004, Dr. Tarakji diagnosed Plaintiff with "right median dysfunction at wrist, carpal tunnel syndrome, sensory, demyelinating and borderline axonal and mild in nature." (Tr. at 188.) At that time, Dr. Tarakji found "no evidence of cervical radiculopathy, brachial plexopathy, diffuse peripheral neuropathy or any other mononeuropathy of both upper extremities." (*Id.*) On May 28, 2004, Dr. Tarakji noted that Plaintiff had "[l]ow back pain secondary to degenerative lumbar spine disease" and "carpal tunnel syndrome, more pronounced on the right than the left." (Tr. at 187.) On May 28, 2004, images of Plaintiff's lumbosacral spine showed "[m]ild scoliosis" and "[m]inimal degenerative changes in the lumbar spine"; Plaintiff's "joint spaces appear[ed] normal" and there was "[n]o osseous or articular abnormality [] seen" in the left and right hands and wrists. (Tr. at 191-92.)

On June 30, 2004, an MRI showed "shallow left paracentral disc profusion at L3-L4 narrowing the lateral recess" and "[s]mall left paracentral disc protrusion is also identified at L4-

L5, somewhat effacing the thecal sac and appearing to impress on the L5 root." (Tr. at 189, 329, 517.)

On September 13, 2004, Dr. Tarakji interpreted an MRI as showing "mild bulging disc at the level of L3-4 and to a lesser extent L4-5 on the left." (Tr. at 179.) Dr. Tarakji also noted "L5 root irritation without evidence of sustained denervation" and concluded that the "numbness in her hands is related to carpal tunnel syndrome." (*Id.*) On December 13, 2004, Dr. Tarakji noted that Plaintiff continued to have back pain and identified the presence of a "small herniated disc at the level L3-4 and L4-5" and "L5 root compression. Irritation" was found, but there was "no weakness on the examination with ability to do tiptoe and heel walk with straight leg maneuver negative." (Tr. at 183.) Thus, he decided to "send her for a course of physical therapy to include moist heat, ultrasound, massages and ????????????????/ [sic] traction." (Tr. at 183.) On March 14, 2005, Dr. Tarakji noted that Plaintiff "continues to have back pain radiating to the hip and lower extremities . . . [and] occasional numbness," but that "[h]er examination revealed no objective weakness, numbness or decreased reflexes." (Tr. at 182.)

On October 28, 2004, Ali A. Karrar, M.D., conducted a physical examination and concluded that Plaintiff has "features consistent with osteoarthritis, fibromyalgia and the possibility of mild superimposed inflammatory arthritis with rheumatoid pattern . . . her rheumatoid factor was weakly positive." (Tr. at 180, 254.) Plaintiff was treated at the American College of Rheumatology for fibromyalgia from October 2004 to January 2006. (Tr. at 215-53, 255-58.)

A bone study conducted on January 21, 2005, showed "no abnormalities." (Tr. at 262.) In March and April of 2005, Plaintiff underwent physical therapy at Hurley Medical Center. (Tr. at 470-516.) Plaintiff sought treatment at the emergency room of the Hurley Medical Center for bronchitis with asthma in May 2006. (Tr. at 364–69.) In November 2006, a thoracic x-ray showed

8

"no evidence of recent fracture, dislocation, lytic or blastic change," but did note "[m]inimal anterior hypertrophic degenerative changes affecting the mid-thoracic spine." (Tr. at 338.)

Plaintiff was treated by Robert A. Cuthbertson, M.D., from April 2004 through July 2006 for depression. (Tr. at 295-317.) Plaintiff was taken to the Hurley Medical Center on October 16, 2006, because when she picked up her daughter at school, she was screaming that she wanted to go to heaven and other rambling. (Tr. at 354.) The hospital noted a history of depression and anxiety. (Tr. at 355.)

A psychiatric/psychological medical report was completed by Darlene Doerscher, MA, TLLP, and Marianne Goergen, Licensed Psychologist, on September 7, 2004. (Tr. at 192-96.) Plaintiff was diagnosed with:

| | |
|---|---|
| Axis I: | 296.32 Major Depressive Disorder, Recurrent, Moderate. |
| | 309.81 Post Traumatic Stress Disorder. |
| | 300.01 Panic Disorder with Agoraphobia. |
| Axis II: | No Diagnosis. |
| Axis III: | The client reports sinus problems, Graves Disease, Head injury, bulging disc, asthma, carpal tunnel, rheumatoid arthritis and endometriosis. |
| Axis IV: | Primary Support. Social and occupational problems. |
| Axis V: | GAF 50. |

(Tr. at 196.)

A Psychiatric Review Technique completed by Ashor Kaul, M.D., on October 26, 2004, noted affective disorders (depressive syndrome) and anxiety-related disorders (panic attacks and recollections of traumatic experiences). (Tr. at 197-210.) Dr. Kaul also conducted a Mental Residual Functional Capacity ("RFC") Assessment wherein he concluded that Plaintiff's ability to understand and remember, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual were moderately limited. (Tr. at 211.) He also found Plaintiff's ability to complete a

9

normal work day and work week without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods was markedly limited. (Tr. at 212.) He found that Plaintiff's ability to interact appropriately with the general public and to respond appropriately to changes in the work setting were moderately limited. (Tr. at 212.)

A Physical RFC Assessment concluded that Plaintiff could occasionally lift 20 pounds, frequently lift up to 10 pounds, stand or walk at least 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, and was unlimited in her ability to push or pull. (Tr. at 319.) The assessment further concluded that Plaintiff was occasionally limited in all of the postural areas, but had no manipulative, visual, communicative, or environmental limitations. (Tr. at 320-24.)

Plaintiff indicated on her function report that she prepares meals about three times weekly, does laundry, washes dishes, vacuums, goes outside twice a day, drives (including driving her daughter to school), shops in stores for groceries and clothing for her daughter, and watches television, but that she can no longer keep a checkbook or read. (Tr. at 74-76, 80-82.) She also indicated that she uses a brace for her hand due to carpal tunnel syndrome and uses a walker for her back and leg pain. (Tr. at 77.) She stated that she can walk for two blocks but then must rest for 15 minutes before walking any further. (Tr. at 78.) She added that she does not handle stress or change well because she gets "edgy," but that she has not had any difficulties getting along with people. (*Id.*) She also noted that she has difficulty remembering things and must write them down. (*Id.*)

Plaintiff testified at the administrative hearing that she lived in Florida from December 2006 through March 2007 with her then-boyfriend, and while in Florida she worked at a dry cleaning store as a counter person. (Tr. at 546, 554, 571-72.) She also testified that she attempted to work

10

at McDonald's in 2004, but only worked there one day. (Tr. at 552.) She also briefly worked at an Automobile Auction and Lake Fenton Community Schools as an office assistant in 2004. (Tr. at 553.) She testified that she occasionally shops, makes meals, manages her own money and medications, uses e-mail, owns her own car, drives, and occasionally goes out to eat. (Tr. at 564-69.) Plaintiff also testified that she could "probably" do her past work as a salad maker but probably not her other former jobs because she does not like working with people. (Tr. at 569-70.)

The ALJ asked the vocational expert ("VE") to consider a hypothetical person with Plaintiff's background that can lift up to 20 pounds, repetitively lift up to 10 pounds or less, stand and walk six of eight hours in a workday, sit for eight hours in a workday, occasionally climb stairs, but should not be exposed to fumes and odors, and could tolerate superficial contact with supervisors and co-workers but should not work with the general public. (Tr. at 581.) The VE testified that such a person could perform the work of a food prep/salad maker or parts inspector, but not as a machine operator because of the fumes and odors. (Tr. at 581.) The VE further testified to the number of jobs existing in the regional economy and that his findings were consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. at 580,582-83.) He further testified that one absence per month is allowed and a person needs to be productive 75% of the time to maintain full-time employment. (Tr. at 583.)

### E. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that, since the alleged onset date of March 2, 2004, Plaintiff had engaged in substantial gainful activity in the calendar year 2007. (Tr. at 22.) At step two, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine with a history of injuries stemming from a 1992 auto accident and diagnosis of fibromyalgia, Grave's disease, asthma, part carpal tunnel

11

syndrome, and depression with anxiety were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 23.) At step four, the ALJ found that Plaintiff had the residual functional capacity to perform her past relevant work as a food prep/salad maker, parts inspector and machine operator. (Tr. at 27.) Thus, the ALJ found that Plaintiff was not disabled. (Tr. at 28.)

### F. Analysis and Conclusions

#### 1. Return to Prior Work

As noted, the ALJ concluded that Plaintiff had the ability to return to her prior work. (Tr. at 21-22.) This finding ended the ALJ's disability inquiry because Plaintiff could not make out a prima facie showing of disability.

The Commissioner's regulations state that the agency "will first compare our assessment of your residual functional capacity with the physical and mental demands of your past relevant work." 20 C.F.R. § 416.960(b). "If you can still do this kind of work, we will find that you are not disabled." 20 C.F.R. § 404.1520(f). "'By referring to the claimant's ability to perform a "kind" of work, [the regulations] concentrate[] on the claimant's capacity to perform a type of activity rather than his ability to return to a specific job or to find one exactly like it.'" *Boucher v. Apfel*, No. 99-1906, 2000 WL 1769520, at *7 (6th Cir. Nov. 15, 2000) (quoting *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995)).

In determining the level of exertion required by prior work, the testimony of the VE should be compared to the DOT. *Bauer v. Barnhart*, 168 Fed. App'x 719 (6th Cir. 2006). Simply asking the VE if his testimony is consistent with the DOT satisfies the requirements under Social Security

Regulation 00-4p. *Martin v. Comm'r of Social Security*, 170 Fed. App'x 369, 375-76 (6th Cir. 2006).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

**2.     Substantial Evidence**

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff argues that the ALJ used a hypothetical that did not accurately portray Plaintiff's impairments. (Doc. 11 at 6-13.) Specifically, Plaintiff complains that the hypothetical did not take into account that the mental RFC limited Plaintiff to superficial contact with supervisors and co-workers but no work with the general public and that Plaintiff has moderate difficulties in maintaining concentration, persistence, and pace. (Doc. 11 at 7.) However, the hypothetical specifically included a person who could tolerate superficial contact with supervisors and co-workers but who could not work with the general public. (Tr. at 581.)

As to the limitation regarding concentration, persistence and pace, Plaintiff argues that the failure to include this restriction requires reversal. (Doc. 11 at 7-13.) Relatedly, Plaintiff argues that the ALJ's failure to accord Dr. Kaul's conclusions made in the RFC assessment that Plaintiff has marked limitations in concentration, persistence and pace and is not capable of sustained work

13

was improperly discounted. (Doc. 11 at 16.) Plaintiff further argues that the ALJ's stated reason for discounting Dr. Kaul's conclusion, i.e., "[b]ased on the claimant's recent work experience," is insufficient because Plaintiff indicated she was "unable to handle the situations dealing with people and she was having concentration and nervous issues." (Doc. 11 at 16.)

However, the ALJ did not simply rely on recent work experience but rather indicated that Plaintiff "has not recently treated on an on-going basis for her anxiety or depression except for the one emergency visit in October 2006" and that Plaintiff had stated she was "'good with people' and 'independent' which is inconsistent with her statement that she did not like being with others" and "though complaining of memory loss[, Plaintiff] had good attention and concentration at her examinations as seen above in her evaluations." (Tr. at 26.) In addition, the ALJ noted that Plaintiff is able to make and keep appointments, describe the medications she takes and give a medical history in addition to the abilities indicated in her daily activities. (Tr. at 26.) Finally, the ALJ referred to Plaintiff's own testimony that she "probably" could perform her past work as a kitchen/salad prep worker and that she did not know if she could perform her past work as an inspector. (Tr. at 27.) Based on these findings and the entire record, the ALJ concluded that Plaintiff "is not significantly limited in her physical or mental abilities as to preclude her from performing basic work activities" and that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." (Tr. at 26-27.)

I suggest that the ALJ gave sufficient reasons for discounting Plaintiff's credibility and that these findings are supported by substantial evidence. Social Security regulations prescribe a two-step process for evaluating subjective complaints of pain. The plaintiff must establish an

underlying medical condition and there either must be objective medical evidence to confirm the severity of the alleged pain rising from the condition or the objectively-determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. 20 C.F.R. § 404.1529(b) (1995); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)).

If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms. 20 C.F.R. § 404.1529(c); *Jones*, 945 F.2d at 1369-70. In evaluating the intensity and persistence of subjective symptoms, the ALJ considers objective medical evidence and other information, such as what may precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods plaintiff uses to alleviate his symptoms, and how the symptoms may affect the plaintiff's pattern of daily living. *Id.* When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at **3 (6th Cir. Feb. 11, 1999). An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). I note that because of the nature of fibromyalgia and its symptoms, application of the usual analysis is difficult. *Swain v. Commissioner*, 297 F. Supp. 2d 986, 990 (N.D. Ohio 2003).

Under these standards, I suggest that the ALJ's assessment of Plaintiff's subjective complaints was based on substantial evidence. The ALJ noted inconsistencies in Plaintiff's

15

testimony regarding her ability to work with people and her ability to concentrate, noting that she was capable of good attention at her examinations and that she was able to make and keep appointments and describe her medications and medical history in an organized fashion. (Tr. at 26-27.) *See Cruse v. Comm'r of Social Security*, 502 F.3d 532, 543 (6th Cir. 2007) (discounting credibility appropriate where inconsistencies in the plaintiff's testimony as to her abilities found when compared to her daily activities and where although plaintiff claimed she could not concentrate, doctors noted her ability to recall recent and remote events "while displaying a relevant and organized train of thought.")

I further suggest that the same reasons support the ALJ's decision not to fully credit the RFC assessment's conclusion regarding concentration, persistence and pace. *See Cruse*, 502 F.3d at 544. *See also Infantado v. Astrue*, 263 Fed. App'x 469, 477 (6th Cir. 2008) (ALJ's decision not to fully incorporate limitations as to concentration, persistence and pace supported by level of daily activities performed by Plaintiff); *Sohm v. Astrue*, No. 3:07CV257-J, 2008 WL 2437541, at *3 (W.D. Ky. June 13, 2008) (hypothetical supported by substantial evidence where moderate limitation in abilities to maintain concentration, persistence and pace were not expressly mentioned but where, "[i]nstead of enumerating particular ways in which the limitations might affect [the plaintiff], the ALJ simply assumed the inability to perform in certain ways . . . [such as] assum[ing] that [plaintiff] could do only 'simple, repetitive work.'").

Finally, I suggest that the ALJ's findings accurately portrayed Plaintiff's individual physical impairments in harmony with the objective record medical evidence as presented by the treating and examining physicians, as well as the daily activities described by Plaintiff herself, i.e., that she occasionally shops, makes meals, manages her own money and medications, uses e-mail, owns her own car, drives, and occasionally goes out to eat. (Tr. at 564-69.) *See Griffeth v. Comm'r of Soc.*

*Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). I further find support in Plaintiff's testimony that she could "probably" do her past work as a salad maker as well as her ability to hold a job as a counter person at a dry cleaning store from December 2006 through March 2007 while she lived in Florida. (Tr. at 546, 554, 569-70, 571-72.)

Accordingly, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is well within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail

with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                    s/ *Charles E. Binder*
                                                  CHARLES E. BINDER
Dated: May 4, 2009                            United States Magistrate Judge

### **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: May 4, 2009                            By    s/Patricia T. Morris
                                                           Law Clerk to Magistrate Judge Binder